IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWRENCE DIPAOLA, *et al.*, | No. C 11-2605 SI |
| Plaintiffs, | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND GRANTING LEAVE TO AMEND** |
| v. | |
| JPMORGAN CHASE BANK, | |
| Defendant. | |

Defendant's motion to dismiss the complaint is scheduled for a hearing on August 12, 2011. Pursuant to Civil Local Rule 7-1(b), the Court determines that the matter is appropriate for resolution without oral argument, and VACATES the hearing. For the reasons set forth below, the Court GRANTS defendant's motion to dismiss the complaint and GRANTS plaintiffs limited leave to amend. If plaintiffs wish to amend the complaint, they must do so by **August 26, 2011**.

**BACKGROUND**

On April 21, 2011, plaintiffs Lawrence and Kimberly Dipaola filed this lawsuit against defendants JPMorgan Chase Bank ("Chase") and Does 1-50. The complaint alleges that plaintiffs are the owners of real property located at 379 Verona Avenue, Danville CA 94526. Compl. ¶ 7. The complaint alleges that on or about January 9, 2007, "[p]laintiffs were led to believe that they executed certain loan documents, among which was a certain Promissory Note document, in conjunction with a home loan in the approximate principal sum of $860,000.00 with Washington Mutual Bank F.A. (hereinafter 'WAMU') now part of JPMorgan Chase Bank (hereinafter, 'Chase') . . . ." *Id.* ¶ 13. The complaint alleges that "[when] the Promissory Note and Deed of Trust documents were purportedly

1 signed by Plaintiffs, [the documents] were all presented without review or comment. Plaintiffs asked
2 questions concerning the documents which were not clearly explained. Plaintiffs were confused and
3 puzzled by the lack of explanations and no one explained the ramifications of the documents, only
4 asking for signatures." *Id.* ¶ 14.

5 The complaint alleges that plaintiffs were never informed "what the true interest rate, loan
6 repayment terms, [and] costs and fees for the loan were," nor "was it ever disclosed to Plaintiffs . . . that
7 the loan contained a yield spread premium (YSP) provision, the cost of which was to be paid by
8 Plaintiffs as added points and fees in connection with their residential mortgage loan . . . ." *Id.* ¶¶ 15-16.
9 Plaintiffs also allege that the loan and escrow documents failed to disclose the YSP costs as required
10 by law. *Id.* ¶ 16. The complaint alleges that "[o]ther crucial terms regarding the loan documentation
11 were also never fully explained to Plaintiffs, if at all, as required by statute, including the final exact
12 interest rate set forth in the Promissory Note, how and when any adjustments to that interest rate and
13 the recurring monthly payment would occur, what index or basis would be used for calculating any such
14 interest rate adjustments, nor what the effect of any negative amortization would be." *Id.* ¶ 17. The
15 complaint alleges that as a result of "the Deed of Trust containing small, hidden and/or disguised
16 provisions which were not explained [to plaintiffs] . . . [the] Deed of Trust operates as a Cognovit Note
17 to the sole detriment and subsequent depravation of Plaintiffs and their rightful possession of property."
18 *Id.* ¶ 19.

19 The complaint alleges that on or about September 25, 2008, the United States Office of Thrift
20 Supervision ("OTS") closed WAMU, and "all of [WAMU's] banking was sold to Chase." *Id.* ¶ 21.
21 According to the complaint, JPMorgan Chase assumed plaintiffs' loan and began servicing. *Id.* The
22 complaint alleges that "[a]s a severance of the ownership and possession of the original Note and Deed
23 of Trust has occurred and as the true owner and holder of both the original Note and Deed of Trust are
24 unknown as a result of one or more alleged assignments and the parsed sale of certain rights under the
25 Note to at least one third party, defendants cannot legally foreclose without proof of claim of standing
26 and ownership of debt." *Id.* ¶ 23.

27 The complaint alleges that defendants "engaged in a pattern and practice of defrauding Plaintiffs
28 in that, during the entire life of the mortgage loan, [defendants] failed to properly credit payments made,

2

incorrectly calculated interest on the accounts, and have failed to accurately debit fees." *Id*. ¶ 33. The complaint alleges until 2009, plaintiffs made payments based on the "improper, inaccurate, and fraudulent representations as to Plaintiffs' accounts." *Id*. ¶ 35. In 2009, it became increasingly difficult for plaintiffs to "keep up with the adjusted payments, and Plaintiffs began to ask Defendants questions regarding what they believed to be the shifting terms of the agreement." *Id*. ¶ 35. The complaint alleges that "Plaintiffs are and ha[ve] been seized" of the property, but the complaint does not include any facts regarding a foreclosure or sale of the property. *Id*. ¶ 45.

The complaint includes four claims: (1) misrepresentation and fraud; (2) "rescission and restitution of voidable cognovit note"; (3) quiet title; and (4) unfair business practices pursuant to California Business and Professions Code § 17200.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the

allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

**DISCUSSION**

**I.　Purchase and Assumption Agreement**

Defendant JPMorgan Chase moves to dismiss the complaint on numerous grounds. First, defendant contends that to the extent that plaintiffs' claims are based on the origination of plaintiffs' loan, those claims are barred by the Purchase and Assumption Agreement entered into by JPMorgan Chase and the FDIC.

The documents filed by defendant show that on September 25, 2008, OTS closed WAMU and appointed the FDIC as Receiver. Def's Request for Judicial Notice ("RJN"), Ex. C. When the FDIC is appointed as Receiver, it succeeds to "all rights, titles, powers and privileges of" the failed institution, and may "take over the assets of and operate" the failed institution with all of the powers thereof. 12 U.S.C. §§ 1821(d)(2)(A)(i), 1821(d)(2)(B)(i). The FDIC-Receiver's powers under FIRREA include the power to transfer assets and liabilities of the failed institution through purchase and assumption agreements. *See id.* § 1821(d)(2)(G)(i).

On September 25, 2008, the same date that the FDIC was appointed as Receiver for WAMU, the bulk of WAMU's assets were transferred to JPMorgan Chase Bank pursuant to a Purchase and Assumption Agreement entered between FDIC-Receiver, the FDIC in its corporate capacity, and JPMorgan Chase Bank. *See* Def's RJN, Ex. C. Article 2.5 of that Agreement expressly provides that JPMorgan Chase Bank did not assume the potential liabilities of WAMU associated with claims of borrowers:

> **2.5　Borrower Claims.** Notwithstanding anything to the contrary in this Agreement, any liability associated with borrower claims for payment of or liability to any borrower for monetary relief, or that provide for any other form of relief to any borrower, whether or not such liability is reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, legal or equitable, judicial or extra-judicial, secured or unsecured, whether asserted affirmatively or defensively, related in any way to any loan or commitment to lend made by the Failed Bank prior to failure, or to any loan made by a third party in connection with a loan which is or was held by the Failed Bank, or otherwise arising in connection with the Failed Bank's lending or loan purchase activities are specifically not assumed by the Assuming Bank.

4

*Id*. at 9. Thus, "by the terms of the P&A Agreement, JPMorgan Chase expressly disclaimed assumption of liability arising from borrower claims . . . [t]his section leaves the FDIC as the responsible party with respect to those claims." *Cassese v. Washington Mutual Bank*, 05 CV 2724 (ADS) (ARL), 2008 WL 7022845, at *3 (E.D.N.Y. Dec. 22, 2008) (interpreting same P&A Agreement); *see also Payne v. Security Sav. & Loan Ass'n*, 924 F.2d 109, 111 (7th Cir. 1991) ("Absent an express transfer of liability by the [Receiver] and an express assumption of liability by Security Federal, FIRREA directs that [the Receiver] is the proper successor to the liability at issue here.").

Plaintiffs' opposition responds that Section 2.5 of the Purchase and Assumption Agreement "does not prohibit any claims against Chase Bank as servicer of the loan. . . . Plaintiffs' claims are viable because their causes of action include fraud and misrepresentation occurring during the servicing and entire life of the loan, as well as claims occurring after the origination of the loan." Opp'n at 9:1-4. Thus, plaintiffs implicitly concede that they cannot bring any claims against JPMorgan Chase based on the origination of the loan.

Accordingly, the Court GRANTS defendant's motion to dismiss plaintiffs' claims to the extent those claims are based on the origination of the loan. Those claims are dismissed without leave to amend.

## II.     Misrepresentation and fraud

Defendant moves to dismiss the misrepresentation and fraud claim on numerous grounds. First, defendant correctly contends that these claims lack particularity. To determine if the elements of fraud have been sufficiently pleaded, the Court looks to state law. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009). In California, the elements of fraud are: (1) a misrepresentation; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damages. *Id.* Vague or conclusory allegations are insufficient to satisfy Rule 9(b)'s particularity requirement. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). To comply with Rule 9(b), fraud allegations must be specific enough to give defendants notice of the particular misconduct that is alleged to constitute the fraud so that they can defend against the claim. *Bly-McGee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001). For corporate defendants, a plaintiff must allege "the names of the persons

5

who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Dubin v. BAC Home Loans Servicing*, No. C-10-05065 EDL, 2011 WL 794995, at *5-6 (N.D. Cal. Mar. 1, 2011); *Tarmann v. State Farm Mut. Auto Ins. Co.*, 2 Cal. App. 4th 153, 157 (1991).

Plaintiffs' fraud and misrepresentation claim fails to meet these standards. Most of the allegations in this claim relate to the origination of the loan, and plaintiffs concede they cannot pursue those claims against JPMorgan. The remaining allegations generally allege that defendants "engaged in a pattern and practice of defrauding Plaintiffs in that, during the entire life of the mortgage loan, [defendants] failed to properly credit payments made, incorrectly calculated interest on the accounts, and have failed to accurately debit fees." Compl. ¶ 33. The complaint does not contain any factual allegations about the fraudulent "pattern and practice," nor does the complaint allege how payments, interest, and fees were *fraudulently* – as opposed to "incorrectly" or inaccurately – calculated. The complaint also does not identify any particular individual who made any misrepresentations, their authority to speak on behalf of defendant, to whom they spoke, precisely what was said, and when the representations were made. *Tarmann*, 2 Cal. App. 4th at 157. These allegations do not meet the particularity requirements of Rule 9(b).

Accordingly, the Court GRANTS defendant's motion to dismiss the fraud and misrepresentation claim, and GRANTS plaintiffs limited leave to amend. If plaintiffs choose to amend this claim, plaintiffs must plead the claim with particularity as required by Federal Rule of Civil Procedure 9(b).

## II. Rescission and restitution of "voidable cognovit note"

Plaintiffs' claim for "rescission and restitution of voidable cognovit note" alleges that "the alleged agreement fails for lack of fair and reasonable consideration" and that "Defendant WAMU, now part of Chase, knew about the cognovit clauses in the loan document but never provided fair consideration." Compl. ¶ 40.

Defendant contends, *inter alia*, that this claim is barred by the Purchase and Assumption Agreement. As noted *supra*, plaintiffs concede that they may not pursue claims based on the origination of the loan against JPMorgan. Opp'n at 9:1-4. All of the allegations in the complaint under the

"rescission and restitution of voidable cognovit note" relate to the origination of the complaint, and plaintiffs' opposition does not assert any factual basis for this claim unrelated to the origination of the complaint. Accordingly, the Court concludes that this claim is barred by the Purchase and Assumption Agreement, and GRANTS defendant's motion without leave to amend.

### III.     Quiet title

Defendant moves to dismiss plaintiffs' claim for quiet title on numerous grounds. Plaintiffs' opposition does not address this claim, and thus the Court concludes that plaintiffs have abandoned this claim. The Court GRANTS defendant's motion to dismiss the quiet title claim without leave to amend.

### IV.     Cal. Bus. & Prof. Code § 17200

Plaintiffs' § 17200 claim alleges that "Defendants . . . committed unfair competition against Plaintiffs . . . by, among other things, inducing Plaintiffs to enter into a purported agreement based on Defendants' fraudulent representations . . . ." Compl. ¶ 51. The complaint alleges that defendants engaged in "fraudulent conduct" by, *inter alia*, failing to disclose the loan's interest rate and other information about the loan. *Id*. ¶¶ 52-53.

Defendant contends that plaintiffs lack standing because they have not alleged an "injury in fact and a loss of money or property caused by unfair competition." *Peterson v. Cellco Partnership*, 164 Cal. App. 4th 1583, 1590 (2008). Defendant also contends that plaintiffs have failed to allege a predicate wrong because the claim is based on plaintiffs' deficient fraud claim.

Plaintiffs respond that "[i]t is clearly unethical and substantially injurious to consumers for a loan servicer to, among other things, charge a higher interest rate than represented and promised to Plaintiffs, to omit and fail to disclose information about the loan, and to foreclose upon a home when the true owner of the Deed of Trust and Note are unknown." Opp'n at 12:4-7. Plaintiffs also rely on their fraud claim as the basis for their § 17200 claim.

The Court concludes that plaintiffs have failed to state a claim under § 17200 claim. For the reasons discussed *supra*, the fraud claim is deficient and thus cannot serve as the predicate for this claim. Moreover, as currently pled, the § 17200 claim appears to be entirely based on the origination

of the loan, *see* Compl. ¶¶ 51-53. In addition, defendant is correct that the complaint does not allege standing under § 17200 because the complaint does not contain any facts regarding whether defendant has foreclosed on the property, or precisely how plaintiffs have suffered a loss of money or property caused by unfair competition.

Accordingly, the Court GRANTS defendant's motion to dismiss and GRANTS plaintiffs leave to amend this claim.

## VI. Punitive damages

Defendant moves to dismiss plaintiffs' claim for punitive damages, arguing that the complaint does not contain any allegations showing that defendant acted with malice, oppression or fraud. Plaintiffs' opposition does not address defendant's arguments.

The Court has dismissed all of the claims in the complaint, and agrees with defendant that there are no factual allegations supporting a claim for punitive damages. The Court DISMISSES the request for punitive damages. If plaintiffs amend the complaint and wish to seek punitive damages, the complaint must include factual allegations in support of such relief, and plaintiffs may not simply include conclusory allegations of fraud, malice or oppression. *See Kelley v. Corrections Corp. of America*, 750 F. Supp. 2d 1132, 1147-48 (E.D. Cal. 2010).

## CONCLUSION

For the reasons stated above, the Court GRANTS defendant's motion to dismiss the complaint, and GRANTS plaintiffs limited leave to amend in accordance with this order. If plaintiffs wish to file an amended complaint, the amended complaint must be filed no later than **August 26, 2011**.

**IT IS SO ORDERED.**

Dated: August 10, 2011

SUSAN ILLSTON
United States District Judge